OPINION
Defendant-appellant, Community Insurance Company dba Anthem Blue Cross/Blue Shield ("Anthem"), appeals the decision of the Butler County Court of Common Pleas finding that Anthem waived its rights of recovery in a personal injury suit by plaintiffs-appellees, Robert R. Keegan and his children, against Anthem and defendants-appellees, Mark S. Sneed and Taylor Home Improvement ("Taylor Home").
Keegan was injured in an automobile accident caused by Sneed, an employee of Taylor Home. Keegan incurred substantial medical expenses and lost wages. Anthem, as Keegan's health benefits provider, paid part of the medical expenses.
Keegan filed suit against Sneed and Taylor Home seeking compensation for his injuries and loss of consortium for his two sons.[1] Keegan named Anthem as a co-defendant praying for "a judgment against Anthem Blue Cross Blue Shield for an itemization of those expenses that defendant has paid which were reasonable and necessary for injuries sustained in this collision[.]"[2]
Sneed and Taylor Home answered. Anthem also answered. Anthem cross-claimed for subrogation against Sneed and Taylor Home for the medical expense benefits it paid on Keegan's behalf. Anthem also counterclaimed for reimbursement against Keegan, in the event that he received a judgment against Sneed and Taylor Home.[3] Sneed and Taylor Home and Keegan timely answered the cross-claim and counterclaim.
The parties were ordered to mediate the dispute, and Keegan settled with Sneed and Taylor Home. Although Anthem was present at the mediation, it refused settlement offers. Keegan's causes of action against Sneed and Taylor Home were dismissed. Anthem voluntarily dismissed its cross-claim and counterclaim.
The parties filed pretrial statements. Anthem then filed a motion for judgment on the pleadings. Anthem argued that the complaint did not properly set forth an action for declaratory judgment. Keegan filed a memorandum in opposition, as well as his own motion for judgment on the pleadings. Keegan argued that Anthem waived its subrogation rights by dismissing its cross-claim and counterclaim. Keegan requested judgment as to expenses arising out of the collision.
A bench trial was held on Keegan's apparent declaratory judgment claim against Anthem. After Keegan's presentation, Anthem made a motion to dismiss for failure to show a right to relief. The trial court overruled all the outstanding motions. Anthem presented no testimony or evidence.
The trial court filed a decision finding that Keegan's third cause of action, as against Anthem, stated a cause of action for declaratory relief
 of the rights of Anthem Blue Cross and Blue Shield and Robert R. Keegan pursuant to the subrogation clause in the policy of health insurance. Ohio clearly is a notice pleading state and all parties in this particular case treated the complaint as a declaratory judgment action. This is strongly evidenced by Defendant Anthem Blue Cross Blue Shield's action in subsequently filing its cross claim and counterclaim against the plaintiff and the tortfeasor.
 The trial court found that Anthem failed to prove that it had a subrogated interest or that the benefits it paid were "a proximate and direct result of the negligence of the tortfeasor." The trial court concluded that Anthem abandoned and waived any rights it had when it dismissed its cross-claim and counterclaim. The trial court entered judgment that Anthem "had no right of subrogation to any recoveries that the plaintiff may have received."[4] Anthem appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING ANTHEM'S MOTION FOR JUDGMENT ON THE PLEADINGS AND IN FINDING PLAINTIFF'S COMPLAINT WAS A CAUSE OF ACTION SEEKING A DECLARATORY JUDGMENT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DENYING ANTHEM'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND IN DENYING ANTHEM'S MOTION TO DISMISS PURSUANT TO CIV.R. 41(B)(2), AS PLAINTIFFS' COMPLAINT WAS NOT A PROPER DECLARATORY JUDGMENT ACTION AND PLAINTIFFS WERE NOT ENTITLED TO RELIEF.
 In its first two assignments of error, Anthem contends that Keegan failed to set forth a basis for declaratory judgment. It asserts that although Keegan continually claimed to be seeking to determine the parties' rights, those rights were not contested, and only the amount to be paid was at issue.
Civ.R. 12(C) provides:
 Motion for judgment on the pleadings. After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings.
 A motion pursuant to Civ.R. 12(C) raises only questions of law to be determined by consideration of the pleadings. State ex rel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 570; Kareth v. Toyota Motor Sales (Sept. 28, 1998), Clermont App. No. CA98-01-011, unreported, at 3, appeal dismissed (1999), 84 Ohio St.3d 1502. Dismissal of a cause under Civ.R. 12(C) is appropriate where the court
 (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and
 (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.
 Midwest Pride IV, 75 Ohio St.3d at 570, citing Lin v. Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 99. Thus, Civ.R. 12(C) requires a finding that "no material factual issues exist and that the movant is entitled to judgment as a matter of law." Midwest Pride IV, 75 Ohio St.3d at 570. Unlike a determination under Civ.R. 12(B)(6), which allows for review of the complaint alone, review under Civ.R. 12(C) allows all pleadings to be considered. Id. at 569.
A declaratory judgment action allows the court to declare the rights, status, and other legal relations and obligations of the parties. Civ.R. 57;[5] R.C. 2721.03; King v. W. Res. Group (1997),125 Ohio App.3d 1, 5, discretionary appeal not allowed (1998),81 Ohio St.3d 1502. Such an action is an appropriate mechanism for establishing the obligation of an insurer in a controversy between it and its insured as to the insurer's liability under the policy. Id. SeeAllstate Ins. Co. v. Coriell (C.P. 1971), 30 Ohio Misc. 67. Three elements are necessary for declaratory judgment to be obtained as an alternate to other remedies:
 (1) a real controversy within the scope of the Declaratory Judgment Act (R.C. 2721.01-.15) must exist between adverse parties;
(2) which is justiciable in nature; and
 (3) speedy relief is necessary to the preservation of rights that may otherwise be impaired or lost.
 Freedom Road Foundation v. Ohio Dept. of Liquor Control (1997), 80 Ohio St.3d 202, 204, rehearing/reconsideration denied, 80 Ohio St.3d 1481; Rocky Fork Hunt Country Club v. Testa (1997), 120 Ohio App.3d 442, 445. A court may refuse a declaratory judgment where "the judgment or decree would not terminate the uncertainty or controversy giving rise to the action or proceeding[.]" R.C. 2721.07; Molnar v. Ohio Liquor Control Comm. (1992), 79 Ohio App.3d 318, 320. A declaratory judgment action "may not be used to determine isolated questions of fact." Travelers Indemn. Co. v. Cochrane (1951), 155 Ohio St. 305, paragraph two of the syllabus. Nor is such an action appropriate where "a resolution of the controversy depends greatly upon a determination of the facts of the case." Therapy Partners of America v. Health Providers, Inc. (1998), 129 Ohio App.3d 572, 578.
In the instant case, Keegan requested "a judgment against Anthem Blue Cross Blue Shield for an itemization of those expenses that defendant has paid which were reasonable and necessary for injuries sustained in this collision[.]" Keegan based his third cause of action, that for a declaratory judgment, upon his admission that Anthem had rights of reimbursement and subrogation under the contract. As a result, there was no real controversy between Keegan and Anthem concerning their rights under the insurance contract.
The only dispute, and the judgment which Keegan requested, concerned the factual matter of the amount of expenses which Anthem paid and to which it could later claim right. In effect, Keegan attempted to force Anthem to prove, as a purely factual matter, what amounts it could ultimately recover from either Keegan or Sneed and Taylor Home. This was not a proper subject for a declaratory judgment action.
Keegan did not state any basis upon which declaratory judgment could be considered, as his complaint concerned only a factual matter, rather than a determination of rights under the insurance contract. The trial court abused its discretion by finding otherwise and by denying Anthem's motion for judgment on the pleadings. The court further erred by holding a hearing on the non-existent claim for declaratory judgment. Because Anthem was entitled to judgment on the pleadings, we need not address the trial court's decision overruling Anthem's motion for dismissal pursuant to Civ.R. 41(B)-(2), mooting the second assignment of error. The first assignment of error is sustained.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN FINDING THE [sic] ANTHEM WAIVED ITS RIGHT TO SUBROGATION AND REIMBURSEMENT.
 In its final assignment of error, Anthem contends that it did not waive its rights to reimbursement and subrogation when it dismissed its cross-claim and counterclaim. It asserts that these were permissive claims which it could voluntarily dismiss.[6]
Anthem's voluntary dismissals were filed before the trial court improperly held the hearing on Keegan's non-existent declaratory judgment claim. If the dismissals are effective, the case is fully disposed of because no outstanding claims would be left for adjudication.
Whether a counterclaim is compulsory, thus required to be asserted, or permissive, so that a party may choose whether to assert it, is determined by Civ.R. 13. Civ.R. 13(A) governs compulsory counterclaims and provides:
 Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought the suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.
 A counterclaim's status as compulsory or permissive is an important determination under Civ.R. 13. A compulsory counterclaim must be asserted under Civ.R. 13(A), which requires application of a two-prong test:
 (1) does the claim exist at the time of serving the pleading; and
 (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim.
 Rettig Enterprises, Inc. v. Koehler (1994), 68 Ohio St.3d 274, 277. Civ.R. 13(A) requires that all existing claims between opposing parties arising from the same transaction or occurrence be litigated in a single lawsuit, regardless of which party initiates the action. Id. at paragraph one of the syllabus. In determining whether claims arise out of the same transaction or occurrence, Ohio courts utilize the "logical relation" test. Id. at paragraph two of the syllabus. This test is useful because of its flexibility:
 "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. * * * That they are not precisely identical, or that the counterclaim embraces additional allegations * * * does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars, the same as those constituting the defendant's counterclaim.
 Id. at 278-279, quoting Moore v. New York Cotton Exchange
(1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371.
A compulsory counterclaim is thus a claim which is "logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." Rettig Enterprises, 68 Ohio St.3d at paragraph two of the syllabus. See Staff Notes (1970) to Civ.R. 13. Counterclaims are compulsory where they "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." Id. at 279, quotingGreat Lakes Rubber Corp. v. Herbert Cooper Co. (C.A.3, 1961), 286 F.2d 631,634. The purpose of Civ.R. 13(A) and the logical relation test is to "avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." Rettig Enterprises, 68 Ohio St.3d at 278, citing Staff Notes (1970) to Civ.R. 13 and 6 Wright, Miller Kane, Federal Practice and Procedure (Civil 2d 1990), 65, Section 1410.
A compulsory counterclaim must be asserted in the original lawsuit, or it will be thereafter barred as res judicata once the original action reaches a final judgment. See Rettig, 68 Ohio St.3d at 279; Stern v.Whitlatch Co. (1993), 91 Ohio App.3d 32, 36, jurisdictional motion overruled (1994), 68 Ohio St.3d 1447. Furthermore, compulsory counterclaims, once filed, may not be voluntarily dismissed under Civ.R. 41(A) and (C).[7] The voluntary dismissal of the compulsory counterclaim bars the party from pursuing the claim at a later date.Id.
By contrast, a permissive counterclaim need not be asserted in the original lawsuit. Civ.R. 13(B) states:
 Permissive counterclaims. A pleading may state as a counterclaim any counterclaim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.
 A permissive counterclaim may be a claim which does not arise out of the transaction or occurrence that is the subject matter of the underlying claim, but instead arises during the course of the underlying litigation. See Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, 299. Because the claim need not be asserted in the underlying litigation, voluntary dismissal of a permissive counterclaim pursuant to Civ.R. 41(A) and (C) does not result in the party being barred from reasserting the claim. See _Rettig Enterprises, Inc. v. Koehler
(Aug. 27, 1992), Hancock App. No. 5-91-19, unreported, 1992 WL 209348, at *3, reversed on other grounds (1994), 68 Ohio St.3d 274.
Cross-claims are governed by Civ.R. 13(G):
 Cross-claim against co-party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.
 Cross-claims are traditionally asserted by one defendant against another defendant, although they may also involve co-plaintiffs. _Campbell v. Kohn (July 20, 1983), Butler App. No. CA81-10-102, unreported, at 14-15. The purpose behind Civ.R. 13(G), like that of Civ.R. 13(A) and (B), is to allow the parties to dispose of all claims arising out of a single set of facts in a single action. Thus, the "logical relation" test is applicable to determining if a cross-claim may be asserted in a given underlying suit. Id. Like permissive counterclaims, cross-claims are permissive, and they may be made in the underlying suit or asserted as a separate, later action. Id.; Harco Ins. Co. v. Smith (Dec. 3, 1997), Wayne App. No. 97CA0023, unreported, 1997 WL 772841, at *2. Failure to assert a cross-claim in the underlying suit will not result in waiver of the claim. Id.
With these principles concerning Civ.R. 13 claims in mind, we now turn to the pleading status of Anthem's subrogation and reimbursement rights. Subrogation and reimbursement are two different concepts. Subrogation allows the insurance company to recover from the tortfeasor money it paid in benefits on behalf of its insured. Reimbursement allows the insurance company to collect such payments from its insured after the insured has received a full settlement from the tortfeasor. See Curp v. Stone (Feb. 16, 1996), Montgomery App. No. 14805, unreported, 1996 WL 65248, at *1-2. Once an insurance company has paid benefits on behalf of its insured, where the insurance contract includes a subrogation clause, the insurance company becomes a real party in interest to the action. Civ.R. 17(A);[8] Shealy v. Campbell (1985), 20 Ohio St.3d 23, 25; Smithv. Travelers Ins. Co. (1977), 50 Ohio St.2d 43, 45.
Because a subrogated insurance company is a real party in interest, it must be made a party to the action. Typically, this requires joining the insurance company as a co-plaintiff, pursuant to Civ.R. 19(A)(3), which provides:
 A person who is subject to service of process shall be joined as a party in the action if * * * (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. * * * If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.
 When properly joined as a plaintiff, the insurance company must assert a compulsory counterclaim against the tortfeasor to preserve its right of subrogation. If the insurance company refuses to join the action and is made a defendant or an involuntary plaintiff, it may be ordered by the court to assert a subrogation claim or be forever barred from raising the claim. See John Hancock Mut. Life Ins. Co. v. Bird (1990), 69 Ohio App.3d 206, 209; Johnson v. General Tire Rubber Co. (Apr. 18, 1985), Franklin App. No. 84AP-130, unreported, 1985 WL 10249, *2.
 In the instant case, Anthem was not properly brought in as a co-plaintiff to assert its subrogation claim. Anthem was instead brought into the case by Keegan as a co-defendant. Anthem was not ordered by the court to assert its subrogation claim. The result of Keegan's action suing Anthem as a defendant was that Anthem was placed in a position that its subrogation claim could be brought only as a cross-claim pursuant to Civ.R. 13(G). Cross-claims are permissive. Thus, Anthem could voluntarily dismiss its cross-claim against Sneed and Taylor Home for subrogation pursuant to Civ.R. 41(A)(1) and (C), without waiving its right to subrogation.[9]
The status of Anthem's right of reimbursement from Keegan is also affected by Keegan's failure to join Anthem as a co- plaintiff. When an insurance company is properly made a co-plaintiff, its right of reimbursement is a cross-claim against its co-plaintiff/ insured. This cross-claim accrues only after the insured receives money from the tortfeasor. See Curp, 1996 WL 65248, at *1-2. Of course, Anthem was brought in as a defendant, making it impossible for Anthem to assert its right of reimbursement as a cross-claim. Rather, Anthem's right of reimbursement could only be asserted as a counterclaim.
At first glance, it might appear that this claim for reimbursement would be a compulsory counterclaim as it arises out of the insurance contract which is the subject of Keegan's attempted declaratory judgment action. But, as noted above, the right of reimbursement accrued only after Keegan settled with Sneed and Taylor Home. At the time Keegan filed his complaint, no settlement had occurred. At the time Anthem answered Keegan's complaint, it was not required to assert a counterclaim for reimbursement, as such a claim did not yet exist. The claim for reimbursement was thus a permissive counterclaim which Anthem could voluntarily dismiss at any time before trial, pursuant to Civ.R. 41(A)(1) and (C), without waiving the claim.[10]
As a result of Keegan's failure to properly join Anthem by Civ.R. 19(A)(3), Anthem's claims for reimbursement and subrogation were both permissive claims which Anthem could voluntarily dismiss. The trial court erred in finding that Anthem waived its rights by voluntarily dismissing its counterclaim and cross-claim.
Anthem did not waive its rights of reimbursement and subrogation. It may timely re-file its claims at a later date. The third assignment of error is sustained.
Judgment reversed.
POWELL, P.J., concurs.
WALSH, J., dissents.
[1] For convenience, we address the arguments on behalf of Keegan and his sons as if Keegan were the only plaintiff because resolution of Keegan's claims may resolve any derivative loss of consortium claims held by his sons.
[2] As discussed below in the third assignment of error, proper procedure would have been to join Anthem as a co-plaintiff pursuant to Civ.R. 19(A)(3) so that Anthem would assert its right to subrogation against Sneed and Taylor Home as a compulsory counterclaim. The complaint is unclear whether Keegan sought to force Anthem to assert its right of subrogation against Sneed and Taylor Home (which Keegan could not do), or whether Keegan was concerned that Anthem might later seek reimbursement from him. Throughout the proceedings, Keegan termed all issues as concerning "subrogation," even though subrogation and reimbursement are distinct recoveries, and even though Keegan would not be a party to any subrogation Anthem claimed against Sneed and Taylor Home.
[3] Anthem's pleadings were not timely filed, but this was never raised and it is not now at issue.
[4] This finding would actually constitute a finding that Anthem waived its right of reimbursement against Keegan, not subrogation, as that claim would be against Sneed and Taylor Home.
[5] Civ.R. 57 provides:
 The procedure for obtaining a declaratory judgment pursuant to Sections 2721.01 to 2721.15, inclusive, of the Revised Code, shall be in accordance with these rules. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.
[6] This issue arises solely because Keegan failed to properly join Anthem as a co-plaintiff. Numerous cases, as cited below, demonstrate that had Anthem been made a co-plaintiff, it would have been required to assert its right to subrogation against Sneed and Taylor Home as a compulsory counterclaim. It is Keegan's failure to properly join Anthem as a co-plaintiff that puts the status of Anthem's claims in question.
[7] Civ.R. 41 provides:
(A) Voluntary dismissal: effect thereof.
 (1) By plaintiff; by stipulation. Subject to the provisions of Rule 23(E) and Rule 66, an action may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by the defendant or (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice or dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim.
* * *
 (C) Dismissal of counterclaim, cross-claim, or third party claim. The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subdivision (A)(1) of this rule shall be made before the commencement of trial.
[8] 8. Civ.R. 17(A) states:
 (A) Real party in interest. Every action shall be prosecuted in the name of the real party in interest.
 * * * [A] party with whom or in whose name a contract has been made for the benefit of another, * * * may sue in his name as such representative without joining with him the party for whose benefit the action is brought.
[9] Sneed and Taylor Home argue that Anthem's right of subrogation was a compulsory counterclaim. However, Sneed and Taylor Home fail to discern that it was impossible for Anthem to state such a counterclaim as all the parties were co-defendants, a situation addressed by the clear language of Civ.R. 13.
[10] Keegan argues that when he, Sneed, and Taylor Home settled, Anthem's reimbursement counterclaim accrued, making it compulsory. That Anthem's right of reimbursement accrued during litigation demonstrates that it was a permissive counterclaim. Had Keegan's counsel explored the difference between subrogation and reimbursement and between compulsory and permissive counterclaims, counsel would have recognized the frivolity of this argument.