DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, which granted appellee Spartan Chemical Company, Inc.'s motion for summary judgment. For the following reasons, the decision of the trial court is affirmed.
 {¶ 2} This appeal comes from the third separate action in the litigation between appellee and appellant Toledo Industrial Maintenance and Supply, Inc. The companies formerly enjoyed a business relationship whereby appellant purchased and redistributed cleaning products manufactured by appellee. However, the relationship soured, and in November 2000, appellee filed suit alleging that appellant owed it over $37,000 for products that were delivered but never paid for, claiming breach of contract and unjust enrichment ("Spartan I"). Appellee obtained a judgment against appellant when the latter defaulted by not filing an answer. In seeking to enforce this judgment, appellee took a debtor's exam, and Bruce Quicker, appellant's CEO, testified on appellant's behalf. In the deposition, Quicker contended that appellant's failure to pay the $37,000 it owed to appellee resulted from appellant's dwindling resources caused by appellee's mishandling of one of appellant's biggest accounts, Alpha Tube.
 {¶ 3} The second installment in this controversy occurred when appellee filed suit in an effort to enforce the judgment obtained in Spartan I. Specifically, appellee sought to attach the equitable interest in appellant's accounts receivable and in a loan given by appellant to Quicker ("Spartan II"). Quicker claimed that appellant forgave repayment of the loan, and the case remains pending in the common pleas court.
 {¶ 4} The instant appeal was born out of chapter three of the litigation, a complaint filed by appellant wherein it claimed losses due to appellee's breach of contract, negligent misrepresentation, and intentional infliction of emotional distress ("Spartan III"). Specifically, appellant alleged in Count 1 that appellee breached its exclusivity agreement with appellee by dealing directly with several of appellant's clients, including Alpha Tube. It alleged in Count 2 that appellee made negligent misrepresentations with regard to the Alpha Tube account, and in Count 3 it alleged that the actions described in Counts 1 and 2 were intentional, extreme, and outrageous and caused appellant to suffer severe emotional distress. Appellee did not answer the complaint, instead filing a motion for summary judgment pursuant to Civ.R. 56, asserting that the claims in Spartan III were compulsory counterclaims to Spartan I. The trial court granted Spartan's motion for summary judgment, and it is from this order that appellant now appeals.
 {¶ 5} Appellant raises three assignments of error for our review:
 {¶ 6} "Assignment of Error No. 1:
 {¶ 7} "The trial court erred in overlooking appellant's affidavit.
 {¶ 8} "Assignment of Error No. 2:
 {¶ 9} "The trial court erred in granting summary judgment.
 {¶ 10} "Assignment of Error No. 3:
 {¶ 11} "The trial court erred in its application of the compulsory counterclaim rule."
 {¶ 12} Appellant's second and third assignments of error are interrelated, and we shall discuss them together.
 {¶ 13} A review of the trial court's granting of summary judgment is de novo, and thus, we apply the same standard as the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Id.
 {¶ 14} We first consider appellant's second and third assignments of error, in which appellant contends that the trial court misapplied the compulsory counterclaim rule and thus erred in granting summary judgment to appellee. Appellant asserts that the claims were permissive and, therefore, should not be barred by the doctrine of res judicata.
 {¶ 15} Civ.R. 13(A) governs compulsory counterclaims. The rule states in pertinent part that:
 {¶ 16} "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
 {¶ 17} The parties agree that the Ohio Supreme Court reaffirmed a two-prong test for determining whether a counterclaim is compulsory in Rettig Enterprises, Inc. v.Koehler, 68 Ohio St.3d 274, 277 (1994), citing Geauga Truck Implement Co. v. Juskiewicz, 9 Ohio St.3d 12, 14 (1984), but differ upon its application in this case. The test has been stated as requiring: 1) that the claim existed at the time of the first pleading; and 2) that the claim "arose out of the transaction or occurrence that is the subject matter of the opposing claim." Rettig, 68 Ohio St.3d at 277. In assessing the second prong, the court embraced the "logical relation" test. Id. at 278. This test mandates that a compulsory counterclaim is one that "is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort time by the parties and the courts * * *." Retting, 68 Ohio St.3d at 274, paragraph two of the syllabus.
 {¶ 18} Appellee argues that the complaint in Spartan III contains three claims, all of which are compulsory counterclaims that should have been asserted in the first suit between the parties. Appellant, on the other hand, asserts that the breach of contract and negligent misrepresentation claims fail the logical relation test and, further, that the intentional infliction of emotional distress cause of action was not in existence at the time the first case was decided.
 {¶ 19} With regard to the intentional infliction of emotional distress claim, appellant asserts that it must be viewed in light of appellee's allegedly vindictive actions in enforcing its judgment in Spartan I. We find this argument unpersuasive, as the allegations contained in appellant's complaint are essentially stated as a bare-bones emotional distress claim resulting from appellee's alleged mishandling of the Alpha Tube account; appellant made no reference to abuse of process. Therefore, we are unpersuaded that the claims alleged in Count 3 of Spartan III were not in existence at the time Spartan I was litigated.
 {¶ 20} The causes of action that form appellant's other claims — breach of an exclusivity contract and negligent misrepresentation — were inarguably extant when appellee brought suit in Spartan I. Appellant claims that the first breach of the exclusivity agreement occurred in 1997, while Spartan I was not heard until 2000. Similarly, in the negligent misrepresentation assertion, appellant complains of false statements made by appellee in 1999. Most significantly, appellant does not even contest that these claims were in existence at the time Spartan I was decided — only that they are not logically related. Therefore, all three claims meet the first prong of the compulsory counterclaim rule, having been in existence at the time the first suit was decided.
 {¶ 21} As for the second prong of the compulsory counterclaim rule, we are unmoved by appellant's argument that the allegations set forth in its complaint are not logically related to the claims brought by appellee in Spartan I. Appellant supports his position by endeavoring to show that the claims in Spartan III resulted from a mishandling of the Alpha Tube account, whereas the claims in Spartan I derived from a different account. Additionally, appellant complains that the allegations in Spartan III are not logically related because there were several contracts formed by the parties, and its claims in Spartan III arose from the breach of an exclusivity agreement rather than an agreement to purchase and sell goods. However, the logical relation test has been interpreted broadly. This court has looked favorably upon a definition of transaction which includes "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Pheils v. Garber Lawrence Pub. Group (Dec. 10, 1993), Lucas App. No. L-92-418, jurisdictional motion overruled (1994), 69 Ohio St.3d 1430, quoting Osborn Co. v. Ohio Dept. ofAdm. Servs. (1992), 80 Ohio App.3d 205, 209, appeal dismissed (1992), 65 Ohio St.3d 1441; Warshawsky Co. v. Arcata Natl.Corp. (C.A. 7, 1977), 552 F.2d 1257, 1261. Here, appellant contended during Spartan I that appellee's mishandling of the Alpha Tube account drove appellant out of business, rendering appellant unable to pay its bills with appellee. Therefore, although the $37,000 at issue in Spartan I was not owed on the Alpha Tube account, Quicker contended that the account went unpaid because of appellee's actions on the Alpha Tube account — the actions alleged in Spartan III. Certainly, then, these allegations could have and should have been raised when Spartan I was filed.
 {¶ 22} We find that the claims presently asserted by appellant were in existence at the time of the first suit and that the claims are logically related to the previous litigation between the parties. That the appellant chose not to appear in the first suit and accepted a default judgment against him does not preclude the applicability of Civ. R. 13(A). Lujan v. Smith
(Nov. 11, 1983) Lucas App. No. L-83-197. We therefore find appellant's second and third assignments of error not well-taken.
 {¶ 23} Appellant argues in its first assignment of error that the trial court erred by overlooking Quicker's affidavit, which was filed in connection with appellant's memorandum in opposition to appellee's motion for summary disposition. Appellant asserts that the trial court must have overlooked the affidavit because, had it been considered, it would have precluded the grant of a summary judgment motion by creating issues of material fact. Appellant states that the affidavit was unopposed and, as such, appellee is entirely bound by its contents. Initially, however, we note that documents other than affidavits, including pleadings and depositions, may be considered by the trial court in ruling upon a motion for summary judgment. Civ. R. 56(C). To conclude that summary judgment could not have been proper had Quicker's affidavit been considered is to ignore the deposition of Quicker filed by appellee before the trial court ruled on the motion.
 {¶ 24} More importantly, the affidavit, viewed even in a light most favorable to the appellant, does not create an issue of material fact in the face of a summary judgment motion basedon res judicata. Appellant points to a statement made by Quicker in his affidavit contending that appellant's failure to pay (Spartan I) was unrelated to the exclusivity agreement breach in regard to the Alpha Tube account asserted in Spartan III. Appellee in turn cites a portion of Quicker's deposition to demonstrate that appellant's inability to pay was, in fact, tied to the Alpha Tube account. We need not, however, reach the question of whether the affidavit conflicts with the deposition, because the affidavit fails to show that the claims asserted in Spartan III are not logically related to those decided in Spartan I.
 {¶ 25} Appellant attempts to parse the controversy into discrete, logically unrelated fragments by distinguishing between different contracts and different accounts upon which the claims in Spartan III are made. However, these attempts are unpersuasive when all of the allegations center on the distributorship agreement that existed between the parties. That the specific aspects of the agreement between the parties were embodied in separate documents is inconsequential where the contracts were part of the same business relationship. The claims decided in Spartan I dealt with a perceived failure in the business relationship between the parties, whereby appellee would sell goods to appellant, who would then distribute the goods. The claims asserted in Spartan III arise from a failure in the same business relationship. Inasmuch as the claims stem from the agreement between the parties dictating the way their enterprise will be carried on, they are "offshoots of the same basic controversy between the parties." Rettig, 68 Ohio St.3d at 279. To this end, even if the averments in appellant's affidavit were accepted as true, they do not create a genuine issue of material fact as to whether or not the claims in Spartan III were compulsory counterclaims in Spartan I. For this reason, appellant's first assignment of error is not well-taken.
 {¶ 26} On consideration whereof, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
Judgment affirmed.
Pietrykowski, J., Lanzinger, J., Singer, J. concur.